UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JONATHAN S.,

                Plaintiff,

v.                                                                                      1:20-CV-1177
                                                                                    (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC          KENNETH HILLER, ESQ.
  Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                             PADMA GHATAGE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 20.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**      **RELEVANT BACKGROUND**

**A.     Factual Background**

Plaintiff was born in 1980.  (T. 59.)  He completed the 10th grade.  (T. 967.)  Generally, Plaintiff's alleged disability consists of learning disability, bipolar disorder, post-traumatic stress disorder ("PTSD"), depression, schizophrenia, and lower back pain.  (T. 61.)  His alleged disability onset date is March 9, 2016.  (T. 59.)

**B.     Procedural History**

On March 9, 2017, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 59.)  Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 11, 2019, Plaintiff appeared before the ALJ, Yvette Diamond.  (T. 960-1010.)  On March 15, 2019, ALJ Diamond issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 41-58.)  On July 2, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

**C.     The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 46-54.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 9, 2017.  (T. 46.)  Second, the ALJ found Plaintiff had the severe impairments of hepatitis C; right shoulder injury; degenerative disc disease; diabetes mellitus; obesity; anxiety; PTSD; major depressive disorder; and polysubstance abuse disorder.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 47.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours.  [Plaintiff] can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders.  He can frequently reach and handle with the dominant, right upper extremity.  [Plaintiff] cannot have concentrated exposure to extreme cold or hazards.  He is limited to simple, routine tasks that are not fast-paced and that have no strict production demands.  [Plaintiff] can have occasional contact with supervisors and coworkers, but no contact with the public.  He is unable to perform tasks involving teamwork.  [Plaintiff] can perform low stress work, which is defined as occasional decision making and occasional changes in the work setting.

(T. 49-50.)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 52-54.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's mental RFC determination is "unsupported by substantial evidence because the ALJ rejected the only functional opinion in the file, from Plaintiff's regular treating provider [Gerald Turk, Psychiatric Nurse Practitioner], failed to give good reasons grounded in the regulatory factors for

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

3

that rejection, and failed to otherwise explain how [she] arrived at the RFC." (Dkt. No. 17 at 12-18.) Second, and lastly, Plaintiff argues the ALJ's physical RFC determination is "unsupported because there is no functional physical opinion evidence in the file and the ALJ was not equipped to interpret the raw medical data to reach [her] RFC determination." (*Id*. at 18-20.) Plaintiff also filed a reply in which he deemed no reply necessary. (Dkt. No. 19.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues Plaintiff did not meet his burden to show that he had a disabling RFC. (Dkt. No. 18 at 7-17.) Second, and lastly, Defendant argues articulating an RFC is not beyond the ALJ's expertise. (*Id*. at 17-23.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  See Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A. Opinion of NP Turk

Plaintiff argues in weighing NP Turk's opinion, the ALJ "entirely ignored" the clinical signs and symptoms the source provided in support of his opinion and treatment notations support the opined limitations.  (Dkt. No. 17 at 13-15.)  Plaintiff argues the ALJ's "failure to consider that NP Turk's opinion was obviously supported by the treatment notes, which were totally consistent with NP Turk's report of clinical signs and symptoms, constituted an improper application of the regulatory factors to the evaluation of NP Turk's opinion."  (Id. at 15.)  For the reasons outlined below, the ALJ properly assessed NP Turk's opinion and her determination was supported by substantial evidence.

In general, although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security regulations.  A "treating source" is defined as the plaintiff's "own physician,

psychologist, or other acceptable medical source who provides [plaintiff], or has provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 416.902[2]. There are five categories of "acceptable medical sources." *Id*. § 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinions may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id*. § 416.913(d)(1).

Although the opinions of non-acceptable medical sources are not entitled to controlling weight; An ALJ must "consider" opinions from other medical sources "using the same factors" considered for the opinion of an acceptable medical source. *See* 20 C.F.R. § 416.927(f)(1). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 416.927(c)(1)-(6).

On December 12, 2018, NP Turk completed a medical residual functional capacity questionnaire. (T. 600-604.) NP Turk listed Plaintiff's diagnoses as: major depressive disorder, personality disorder, and "back, hip, [and] chronic pain." (T. 600.) He did not complete the section concerning the frequency and length of contact. (*Id*.)

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

When asked to describe clinic findings that demonstrate the severity of Plaintiff's mental impairment and symptoms, NP Turk wrote Plaintiff "is severely depressed [and] suffers from severe anxiety.  His symptoms impair[] his ability to function.  Any form of stress can lead to increase psychological destress."  (*Id*.)  When asked to identify signs and symptoms from a check list, NP Turk checked off 20 of 54 listed symptoms.  (T. 601-602.)

      NP Turk completed the section of the form regarding mental abilities and aptitudes needed to do unskilled work.  (T. 602.)  In the categories of "remember work-like procedures" and "understand and remember very short and simple instructions," NP Turk indicated Plaintiff's ability was both "unlimited or very good" and "seriously limited."  (*Id*.)  He indicated Plaintiff was "seriously limited" in his ability to: carry out very short and simple instructions; maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and ask simple questions or request assistance.  (*Id*.)  NP Turk indicated Plaintiff was "unable to meet competitive standards" in his ability to: accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and be aware of normal hazards and

8

take appropriate precautions.  (*Id*.)  He opined Plaintiff had "no useful ability to function" in his ability to deal with normal work stress.  (*Id*.)

NP Turk opined Plaintiff was "seriously limited" in his ability to interact appropriately with the general public; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  (T. 603.)  He opined Plaintiff had "no useful ability to function" in the areas of travel in unfamiliar places and use public transportation.  (*Id*.)  When asked if psychiatric conditions exacerbate Plaintiff's experience of pain or other physical symptoms, NP Turk answered "yes."  (*Id*.)  When asked on average how often Plaintiff would be absent from work, NP Turk checked "more than four days per month."  (T. 604.)  When asked if Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the form, NP Turk answered "yes."  (*Id*.)  When asked if Plaintiff's impairments included alcohol or substance abuse or if alcohol and substance abuse contribute to limitations, NP Turk answered "no."  (*Id*.)

Contrary to Plaintiff's assertion, the ALJ properly assessed NP Turk's opinion under the applicable regulations and afforded NP Turk's opinion "limited weight."  (T. 52.)  Consistent with the regulations, the ALJ acknowledged NP Turk as a "treating provider."  (*Id*.); 20 C.F.R. § 416.927(c)(1)-(2).  The ALJ also noted Plaintiff's testimony that he met with NP Turk monthly for medication management.  (T. 50.)  As outlined by the ALJ "[w]hile deference is generally due to a treating provider's opinion, it does not release such provider from providing some meaningful support for the stated conclusions."  (T. 52.)  The ALJ further stated "although such opinions will routinely rely to some extent on symptoms, the provider should identify pertinent signs and laboratory

findings that one would expect a treating provider to have in the treatment records." (*Id.*)

The ALJ went on to conclude NP Turk's statement "generally fails to identify specific, relevant clinical data in support of its relatively severe restrictions." (T. 50); 20 C.F.R. § 416.927(c)(3)-(4). Indeed, NP Turk did not complete the section of the form asking him to provide an explanation and include findings that support his assessment. *Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (substantial evidence supports the limited weight that the ALJ attributed opinion, opinion was on a check-box forms which specifically requested narrative explanation of any opined limitation which source declined to provide). In addition, the ALJ concluded notations suggested Plaintiff improved with treatment. (T. 50); 20 C.F.R. § 416.927(c)(6). Although Plaintiff disagrees with the ALJ's assessment and weighing of the evidence, the ALJ explained her decision and based it on evidence contained in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") Therefore, contrary to Plaintiff's assertion, the ALJ properly applied the regulatory factors in evaluating NP Turk's opinion.

Next, Plaintiff essentially argues, the ALJ "ignored" the section of the form in which NP Turk checked off symptoms and the identified signs and symptoms were supported by abnormal mental status examination results. (Dkt. No. 17 at 14.) To be sure, the ALJ did not summarize the section of the form in which NP Turk checked off Plaintiff's signs and symptoms from a provided list. (T. 52.) However, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's

10

decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)).  In addition, checking off items on a pre-printed form is not an acceptable substitute for a supporting explanation.  See *Halloran v. Barnhart,* 362 F.3d 28, 31 n.2 (2d Cir. 2004) (checkbox questionnaires without supporting explanations considered "only marginally useful"); *Camille v. Colvin*, 104 F. Supp. 3d 329, 341-342 (W.D.N.Y. 2015) ("Form reports of this sort are, by their nature, of limited evidentiary value."), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).

Although the ALJ did not specifically address the symptoms provided on the form, the ALJ concluded NP Turk's opinion most likely relied "to some extent" on Plaintiff's symptoms.  (T. 52.)  However, the ALJ concluded the provider failed to identify "specific" data to support his "relatively severe restrictions."  (T. 52.)  Therefore, a reading of the ALJ's decision indicates she was aware of, and considered, Plaintiff's symptoms in assessing NP Turk's opinion.

In evaluating NP Turk's opinion, the ALJ properly concluded the opined limitations were not supported by objective evidence in the record.  (T. 52.)  The ALJ noted evidence in the record of objective observations consistent with limitations in abilities to perform the mental functional demands of work.  For example, the ALJ considered mental status examinations which noted anxious mood, rapid speech, restless motor behavior, indications of distractibility, and tangential thought process.  (T. 49, 51.)  However, the ALJ ultimately determined the overall evidence in the record, including other objective evidence, did not support NP Turk's opined limitations.

In making her determination, the ALJ relied on treatment notations in which Plaintiff reported improvement with medication.  (T. 51.)  Indeed, Plaintiff reported to NP

Turk medications were helpful at "addressing psychiatric symptoms." (T. 575, 579.) Plaintiff informed NP Turk that "without meds he rapidly declines in mood and functional status." (T. 583.) Although Plaintiff demonstrated positive symptoms on mental status examination, he also reported improvement with medication. Therefore, the ALJ properly considered the objective evidence in the record and substantial evidence supported his determination to afford NP Turk's opinion limited weight.

In general, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Overall, the ALJ properly assessed NP Turk's opinion under 20 C.F.R. §416.927(c)(1)-(6). Under the regulations, NP Turk is a non-acceptable treating source

who's opinion is not entitled to controlling weight; however, his opinion should nonetheless be considered.  Although Plaintiff cites to evidence in the record he asserts supports NP Turk's opined limitations, the ALJ properly laid out evidence in the record she relied on in affording his opinion limited weight.  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

### B. RFC Determination

Plaintiff argues the ALJ erred in formulating Plaintiff's mental and physical RFC.  First, Plaintiff asserts, in rejecting NP Turk's opinion the ALJ erred in failing to rely on any opinion evidence in formulating the mental RFC.  (Dkt. No. 17 at 16.)  Second, Plaintiff argues, where the ALJ does not rely on any medical opinion in formulating the RFC, she must provide an even more detailed function-by-function assessment of how she arrived at the RFC.  (*Id*. at 18.)  Third, Plaintiff argues the ALJ relied on a mischaracterization of evidence in formulating the physical RFC.  (*Id*. at 18.)  Fourth,

Plaintiff argues the ALJ erred in failing to develop the record because the record does not contain a functional physical opinion.  (*Id*. at 19.)

Plaintiff's argument, that the ALJ's mental RFC was the product of legal error because it was not based on a medical opinion, fails.  An ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion.  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."  *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Therefore, Plaintiff's assertion that the ALJ's RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

Second, contrary to Plaintiff's argument, an ALJ is not required to provide a function-by-function assessment in formulating an RFC.  The Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a *per se* error requiring remand.  *See Cichocki,* 729 F.3d at 174.  "The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence. Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper

legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, [. . .] remand is not necessary merely because an explicit function-by-function analysis was not performed." *Id.* at 177.

Although the ALJ did not engage in an explicit function-by-function assessment in formulating the mental RFC, the ALJ's analysis provided an adequate basis for meaningful review.  For example, in assessing Plaintiff's ability to perform the social functions associated with work activity, the ALJ noted Plaintiff's testimony he had social anxiety.  (T. 51.)  The ALJ further considered positive findings on examination which supported Plaintiff's testimony concerning social anxieties.  (*Id.*)  The ALJ therefore limited Plaintiff to occasional contact with supervisors and coworkers, no contact with the public, and no tasks involving teamwork.  (T. 49.)  The ALJ considered Plaintiff's reports of learning difficulties and limited Plaintiff to simple, routine, repetitive work.  (T. 49, 51.)  Lastly, based on Plaintiff's mental impairments, the ALJ limited Plaintiff to low stress work, defined as occasional decision making and occasional changes in work setting.  (T 49.)  Therefore, Plaintiff's argument that the ALJ was required to provide a function-by-function assessment fails.

Third, Plaintiff argues the ALJ mischaracterized Gary Wang, M.D.'s opinion and further, the opinion was "irrelevant" because it provided no functional opinion.  (Dkt. No. 17 at 18.)  In a treatment notation, Dr. Wang stated he disagreed Plaintiff was "totally disabled physically;" however, the doctor stated he "would respect [a] physiatrist decision about his work capability from [a] psychiatrist view."  (T. 608.)  Dr. Wang encouraged Plaintiff to return to work, stating work related activity would make Plaintiff have better pain control and improve his functioning.  (*Id.*)

The ALJ discussed Dr. Wang's statement noting the doctor "dismissed [Plaintiff's] indications that he was totally disabled and encouraged [him] to return to work." (T. 52.) The ALJ summarized Dr. Wang's treatment together with other evidence in the record concerning Plaintiff's physical complaints. (T. 51-52.) The ALJ then proceeded to afford Dr. Wang's statement, that Plaintiff "is not disabled from a physical perspective," great weight. (T. 52.) Although Dr. Wang's statement is not a functional assessment, it is consistent with Plaintiff's treatment history, activities of daily living, and shows that the record as whole supports that Plaintiff does not have a disabling physical impairment. Therefore, the ALJ did not mischaracterize Dr. Wang's statement and his statement was not "irrelevant."

Fourth, the ALJ was not required to further develop the record and order a physical consultative examination. (Dkt. No. 17 at 19-20.) To be sure, as stated by Plaintiff, the relevant regulations stipulate that a consultative examination is ordered at the Administration's request, on an individual case basis, and when appropriate. *See* 20 C.F.R. § 416.919. However, if the evidence in the record is sufficient to render a decision on Plaintiff's disability, an ALJ is not required to order a consultative examination. *See* 20 C.F.R. § 416.917; *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it); *see also Yancey v. Apfel,* 145 F.3d 106, 114 (2d Cir.1998) (ALJ did not neglect duty to develop record by failing to order consultative psychological examination where the only evidence suggesting an issue was doctor's statement to plaintiff that the problems were "in her head").

16

Here, the ALJ was not required to order a consultative examination because the record was sufficient for the ALJ to render a decision.  The record contained treatment notations, objective examinations, medical imaging, and Plaintiff's testimony.  *See Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (the ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability).  In limiting Plaintiff to a reduced range of light work, the ALJ relied on the record as a whole.  *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just medical opinions).  The ALJ relied on objective medical treatment evidence Plaintiff received for his physical impairments.  (T. 51-52.)  The ALJ also relied on Dr. Wang's treatment observations and statement that Plaintiff was not physically disabled.  (T. 52.)  Lastly, the ALJ relied on Plaintiff's testimony concerning his ability to perform a range of activities of daily living.  (*Id.*)  Therefore, the record was adequate for the ALJ to make a determination.

The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record

evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  See *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:       January 5, 2022

_____
William B. Mitchell Carter
U.S. Magistrate Judge